# THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,
Plaintiff

Vs

WANDA VAZQUEZ GARCED,

Defendants.

Criminal No. 25-cr-296 (SCC)

## DEFENDANT'S MOTION TO STRIKE GOVERNMENT'S SENTENCING MEMORANDUM

COMES NOW defendant Wanda Vazquez-Garced ("Vázquez-Garced"), through her attorneys, and respectfully moves this Court to strike the Government's Sentencing Memorandum (Dkt. No. 13) or, in the alternative, order specific performance of the plea agreement requiring the Government to present its sentencing recommendation without reliance on conduct from the dismissed indictment in Criminal No. 22-342 (SCC). In support thereof, defendant states as follows:

**I.      INTRODUCTION**

The Government has breached the plea agreement in five independent ways. While technically recommending a sentence within the stipulated guideline range of 6 to 12 months, the Government's Sentencing Memorandum seeks to justify the statutory maximum term of imprisonment by (1) importing bribery and corruption allegations from the dismissed indictment that the parties' Stipulation of Facts affirmatively excludes, (2) relying on dollar amounts that exceed the stipulated value of the offense by a factor of

1

twenty-five (25), (3) treating the offense as if defendant received campaign contributions when the offense of conviction is accepting a promise of a contribution that was never actually provided, (4) recommending imprisonment for a zero-point offender in Zone B contrary to binding Sentencing Commission policy guidance that "a sentence other than imprisonment ... is generally appropriate" for such defendants, and (5) recommending the statutory maximum term of imprisonment that is only coherent if based on excluded conduct. The First Circuit has made clear that technical compliance with a plea agreement's literal terms does not cure an "end-run"[1] around the agreement's negotiated boundaries. *United States v. Mojica-Ramos*, 103 F.4th 844, 850-52 (1st Cir. 2024).

## II. THE PLEA AGREEMENT'S TERMS AND THE NATURE OF THE OFFENSE

The Government's breach becomes clear when the offense of conviction is properly understood, both what defendant pled guilty to and, equally important, what she did not plead guilty to.

### A. The Offense of Conviction: Accepting a Promise

The offense of conviction under 52 U.S.C. Section 30121 is accepting a promise of a political campaign contribution by a foreign national. It is not receiving a contribution. It is not benefiting from expenditures made by others. It is accepting a promise, nothing more.

The Stipulation of Facts reflects this understanding. The parties stipulated that "the value of the *promised* contribution was more than $15,000 but did not exceed $25,000."

---

[1] See: *United States v. Canada*, 960 F.2d 263, 269 (1st Cir. 1992) (quoting *United States v. Voccola*, 600 F. Supp. 1534, 1537 (D.R.I. 1985).

(Plea Agreement, Dkt. No. 6, at 11.) (Italics added.) This is the total value of the offense conduct to which the government and the defendant agreed.

Critically, the promised contribution was never actually provided. The SuperPAC that was allegedly formed to support defendant's campaign never received a single dollar, donated nothing to defendant, and spent nothing in support of defendant's campaign.[2] The survey that the Government characterizes as a contribution to defendant's campaign was actually designed and conducted for Brittania for corporate purposes to facilitate an understanding of the business, political and regulatory environment in Puerto Rico. No official action was ever taken in connection with any alleged quid pro quo, because there was no quid pro quo.

B.  **The Stipulated Facts Exclude the Bribery Theory**

The Stipulation of Facts expressly provides that defendant "did not accept the political contribution for her personal monetary gain; but for her political committee to support her candidacy." (Dkt. No. 6, at 11). This language was the product of months of negotiation and reflects the parties' mutual understanding that the offense of conviction is a campaign finance violation, not a bribery scheme involving official acts.

The stipulation contains no reference to any official act, quid pro quo, or corrupt agreement—the very elements that would be required to establish bribery under *McCormick v. United States*, 500 U.S. 257 (1991), and that were central to the dismissed charges in Criminal No. 22-342.

---

[2] DOJ-74127, at 5; DOJ-0000059481.

## III. THE GOVERNMENT'S SENTENCING MEMORANDUM BREACHES THE PLEA AGREEMENT

### A. The First Circuit's Framework

"Plea agreements are governed by general principles of contract law," but "[b]ecause defendants forego fundamental rights by pleading guilty, courts hold the United States to 'the most meticulous standards of both promise and performance.'" *Mojica-Ramos*, 585 F. Supp. 3d 171, 173 (D.P.R. 2022). See also: *United States v. Clark*, 55 F.3d 9, 12 (1st Cir. 1995) (*citing Correale v. United States*, 479 F.2d 944, 947 (1st Cir. 1973). "A defendant who enters a plea agreement waives a panoply of constitutional rights and, therefore, we hold prosecutors to 'the most meticulous standards of both promise and performance. Such standards require more than lip service to, or technical compliance with, the terms of a plea agreement." *United States v. Almonte-Nunez*, 771 F.3d 84, 89 (1st Cir. 2014).

The First Circuit applies a "totality of the circumstances analysis in determining whether a prosecutor engaged in impermissible tactics," asking whether the government's "overall conduct" is "reasonably consistent with making the promised recommendation, rather than the reverse." *Mojica-Ramos*, 103 F.4th at 850 (quoting *United States v. Canada*, 960 F.2d 263, 269 (1st Cir. 1992)). Critically, "when the net effect of the government's behavior at sentencing undermines the benefit of the bargain upon which a defendant has relied, technical compliance with the plea agreement may not suffice to make up for other statements and behavior that can be viewed as an end-run around the terms of the agreement." *United States v. Cortes-Lopez,* 101 F.4th 120, 128 (1st Cir. 2024).

The First Circuit has repeatedly recognized that "a prosecutor is not free to present this information to the court in ways that subvert the plea agreement's 'limits [on] the purpose of [their] remarks.'" *Mojica-Ramos*, 103 F.4th at 851 (quoting *United States v. Miranda-Martinez*, 790 F.3d 270, 275 (1st Cir. 2015)). A prosecutor "may not attempt to use one duty as an instrument for thwarting the other," that is, the duty of candor to the court cannot be weaponized to undermine the plea agreement's negotiated boundaries. *United States v. Saxena*, 229 F.3d 1, 6 (1st Cir. 2000).

Moreover, breach can occur through implicit advocacy, even without explicit repudiation. In *United States v. Clark*, 55 F.3d 9 (1st Cir. 1995), the government had agreed not to oppose an acceptance-of-responsibility adjustment. At sentencing, however, the government filed a memorandum detailing alleged obstruction of justice and stating that "the Government was unaware of this information indicative of obstruction at the time of the plea negotiations." *Id.* at 12. Thereby indicating that it would not have made this plea agreement had it known then what it knows now. *Id*. at 12-13. The First Circuit found breach, even though the government never explicitly stated it was opposing the adjustment. The court explained that the government's "references to the agreement were grudging and apologetic," and that "it is improper for the prosecutor to inject material reservations about the agreement to which the government has committed itself." *Id*. at 13 (quoting *Canada*, 960 F.2d at 269-70).

*Clark* is on point. The Government's Sentencing Memorandum, like the memorandum in *Clark*, advocates for an outcome that can only be justified by conduct outside the scope of the plea agreement. Just as the *Clark* prosecutor undermined its

5

promise by emphasizing alleged obstruction it had agreed not to consider, here the Government undermines the stipulated facts by emphasizing bribery allegations it affirmatively excluded from those facts. And in *Canada*, the Court found breach where "the government's efforts seemed directed at encouraging a higher sentence than the one to which it had agreed," even though the prosecutor had "paid 'lip service' to the negotiated agreement." 960 F.2d at 269, 271.

Importantly, "[w]hether or not the sentencing judge was actually influenced by the [prosecutor's] actions is not a material consideration." *Canada*, 960 F.2d at 271. The focus is on the government's conduct, not its effect.

### B.    Breach One: Reliance on the Excluded Bribery Theory

The Government's Sentencing Memorandum characterizes the offense as "corrupting of the Puerto Rico gubernatorial election process" and references "political corruption." (Dkt. No. 13, at 1, 27). While foreign intervention can be characterized as corrupting the electoral process, the Government does not stop there. Its memorandum repeatedly references the termination of the OCIF Commissioner, the appointment of a replacement allegedly favored by Herrera, and an alleged corrupt agreement between defendant and Herrera. (Dkt. No. 13, at 2-3, 10-12, 26-27). These are not elements of the offense of conviction. They are the core allegations of the abandoned bribery theory from the dismissed seven-count indictment in Criminal No. 22-342, which alleged that defendant conspired to commit federal programs bribery (Count 1), committed federal programs bribery (Counts 2-3, 6), and engaged in honest services wire fraud (Counts 4, 7), all premised on the theory that defendant agreed to terminate the OCIF Commissioner and

6

appoint a replacement of Herrera's choosing "in exchange for" campaign support. (Indictment, Crim. No. 22-342, Dkt. No. 3, at paragraphs 30, 71, 88).

The Stipulation of Facts contains no such allegations. To the contrary, it expressly provides that defendant accepted the contribution "for her political committee to support her candidacy," not as part of any corrupt exchange involving official acts. (Dkt. No. 6, at 11). By framing the offense in terms that evoke the dismissed bribery charges rather than the campaign finance violation to which defendant actually pled, the Government seeks to justify a harsher sentence than the offense of conviction warrants.

Simply put, the government prosecuted an aggressive bribery theory for years, then realized the theory was factually and legally flawed and agreed to the resolution set forth in the plea agreement. Now, however, the Government wants to introduce a raft of unproven and unsupported allegations (not established facts) and asks the court to impose an unprecedented sentence of imprisonment for this misdemeanor violation. We know of no case where this court has sentenced a defendant to prison for a misdemeanor, and this case is no different.

The Government may argue that accepting foreign national contributions inherently threatens electoral integrity. That point is valid in the abstract. It is why Congress criminalized such contributions. But the Government does not seek the statutory maximum term of imprisonment based on the campaign finance violation itself. A promise valued at $15,000 to $25,000 that was never fulfilled does not represent the most serious violation of this statute. The Government justifies seeking the maximum term only by importing

conduct from the very indictment it agreed to dismiss - the very conduct the Stipulation of Facts excludes.

Campaign finance violations and bribery represent mutually exclusive legal theories. Either a contribution was made to aid a campaign, or it was part of a corrupt quid pro quo involving official action. It cannot be both. The Stipulation of Facts establishes the former: the contribution was "for her political committee to support her candidacy," and defendant "did not accept the political contribution for her personal monetary gain." (Dkt. No. 6, at 11). By stipulating to this language (and agreeing to dismiss the indictment in 22-cr-342), the Government affirmatively excluded the bribery theory, the very theory that required allegations of "terminating a Commissioner of OCIF and appointing a new Commissioner of HERRERA's choosing." (Indictment, Crim. No. 22-342, Dkt. No. 3, at paragraph 30). The Government made its choice. When it invokes "corruption" and "incalculable intangible harm" (Dkt. No. 13, at 1, 27), it is not describing a campaign finance violation. It describes the bribery and honest services fraud charges it dismissed. The Government cannot seek a sentence for the crime it chose not to prosecute.

      **C.**    **Breach Two: Reliance on Amounts Far Exceeding the Stipulated Value**

The plea agreement stipulates that "the value of the promised contribution was more than $15,000 but did not exceed $25,000." (Dkt. No. 6, at 11). This is the agreed-upon measure of the offense.

Yet the Government's Sentencing Memorandum references amounts that dwarf this stipulated figure:

1. £263,000 in CT Group research costs allegedly paid by Herrera through Brittania (Dkt. No. 13, at 10);

2. $15,000 paid by Rossini for legal services related to Prosperity Through Leadership PAC, a SuperPAC that was never funded, never made any expenditures, and never benefited defendant's campaign (Dkt. No. 13, at 5);

3. $50,000 in consulting fees paid to Dane Waters for Prosperity Through Leadership PAC, fees for a PAC that never operated (Dkt. No. 13, at 10);

4. $100,000 in contributions Herrera allegedly made during the 2016 election cycle (Dkt. No. 13, at 22);

5. $75,000 allegedly contributed to Salvemos a Puerto Rico, a SuperPAC that supported a different gubernatorial candidate (Dkt. No. 13, at 21);

6. $50,000 allegedly contributed to Puerto Rico Mejor Futuro, a SuperPAC that supported yet another gubernatorial candidate (Dkt. No. 13, at 21).

These figures total approximately $620,000, an amount that exceeds the stipulated value of the offense by a factor of twenty-five. This is akin to a prosecutor agreeing to a plea for possession of 5 kilos of a controlled substance, then arguing at sentencing for a sentence based on 125 kilograms. The Guidelines would never permit such a result. Neither should this Court.

The Government breached the plea agreement by invoking these amounts. The stipulated value of the promised contribution reflects the agreement between the Government and Vázquez-Garced: a promise of campaign support valued at up to $25,000. That is the scope of the offense of conviction.

Whatever Herrera may have spent on consulting fees, legal services, PAC registration, or contributions to other candidates is entirely unrelated to defendant's culpability. Defendant did not control Herrera. She did not direct his spending. She did not know the amounts he was paying to Waters, CT Group, or anyone else. All she accepted was a promise of help valued at $15,000 to $25,000 and the Government agreed.

### D.     Breach Three: Treating a Promise as a Receipt

Perhaps most fundamentally, the Government's Sentencing Memorandum treats the offense as if defendant actually received campaign contributions, when the offense of conviction is accepting a promise of a contribution.

The Government's memorandum states that "Herrera financially contributed to Vazquez's primary campaign by 1) hiring CT Group to conduct opinion research and paying for it directly through Brittania and 2) forming a SuperPAC to assist Vazquez's campaign, including paying consulting fees to the SuperPAC's founder and director, Dane Waters." (Dkt. No. 13, at 3). This language describes actual contributions and expenditures, not a promise.

But the offense is not receiving contributions. It is accepting a promise. And the stipulated facts make clear that defendant accepted a promise valued at $15,000 to $25,000, not actual expenditures of hundreds of thousands of dollars. By characterizing the offense

10

as involving actual financial contributions rather than a mere promise, the Government has fundamentally misrepresented the nature of the offense to which defendant pled guilty.

Moreover, the alleged expenditures the Government references never actually benefited defendant. Critically, the Government itself does not allege otherwise. The Government's Sentencing Memorandum describes the formation of Prosperity Through Leadership PAC, its registration with the FEC, and consulting fees paid to Dane Waters, but nowhere does it allege that the PAC ever received contributions or made any expenditures benefiting defendant's campaign. (Dkt. No. 13, at 7-9). That is because it did not: the PAC was registered but never funded, never operated, and never spent a single dollar on defendant's behalf.[3]

The same is true of the CT Group opinion research. The Government characterizes this as a contribution to defendant's campaign, but the evidence shows otherwise. The CT Group research was commissioned on behalf of Brittania to facilitate an understanding of the business, political and regulatory environment in Puerto Rico. The research was Brittania's tool for evaluating the Puerto Rico landscape, not a contribution to defendant.

The Government thus seeks the statutory maximum based on preparatory expenditures for a PAC that never operated, research that Brittania commissioned for its own purposes, and contributions to SuperPACs that supported other candidates entirely. None of this constitutes campaign support that defendant received. The offense of conviction is accepting a promise valued at $15,000 to $25,000, not receiving actual

---

[3] DOJ-74127, at 5; DOJ-0000059481.

campaign contributions. The Government cannot inflate the seriousness of a promise by reference to Brittania's independent expenditures that defendant did not know about or control.

### E.     Breach Four: Recommending Imprisonment Contrary to Binding Sentencing Commission Policy Guidance

The Government's recommendation for the statutory maximum term of imprisonment also breaches the plea agreement because it contradicts the Sentencing Commission's authoritative policy guidance governing sentences for zero-point offenders.

The plea agreement provides that the Government will recommend a sentence "within the applicable guideline range." (Dkt. No. 6, at 5). The First Circuit has held that "[t]he Sentencing Commission's commentary, including the application notes, is binding on the courts as long as it does not conflict either with the sentencing guidelines themselves or with some statutory provision." *United States v. Daniells*, 79 F.4th 57, 89-90 (1st Cir. 2023) (quoting *United States v. Almeida*, 710 F.3d 437, 441 n.3 (1st Cir. 2013)); *see also Stinson v. United States*, 508 U.S. 36, 38 (1993) (holding that "commentary ... that interprets or explains a guideline is authoritative").

Application Note 9 to U.S.S.G. §5C1.1 provides:

If the defendant received an adjustment under §4C1.1 (Adjustment for Certain Zero-Point Offenders) and the defendant's applicable guideline range is in Zone A or B of the Sentencing Table, **a sentence other than a sentence of imprisonment ... is generally appropriate**.

U.S.S.G. §5C1.1, cmt. n.9 (2024) (emphasis added). This policy statement implements Congress's express directive that the Commission "insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense." 28 U.S.C. §994(j).

Defendant qualifies for this provision. She received the two-level adjustment under §4C1.1 as a zero-point offender, and her guideline range of 6-12 months falls within Zone B of the Sentencing Table. Under the Commission's binding policy guidance, "a sentence other than a sentence of imprisonment ... is generally appropriate" for such defendants.

When the Government agreed to recommend a sentence "within the applicable guideline range," it agreed to operate within the entire Guidelines framework—which includes the Commission's authoritative policy guidance on how that range should be applied to specific categories of defendants. A recommendation for the statutory maximum term of imprisonment for a zero-point offender in Zone B is not a good-faith recommendation "within" the Guidelines framework; it is advocacy directly contrary to the Commission's authoritative interpretation of how the guideline should be applied to this category of defendant.

The word "generally" in Application Note 9 creates a presumption, not a suggestion. For the Government to overcome this presumption, it must identify specific factors that distinguish this case from typical zero-point offenders in Zone B. But the factors the Government relies upon to justify the statutory maximum—the alleged bribery scheme, the hundreds of thousands of dollars in expenditures, the "incalculable intangible harm"—are

13

precisely the conduct that the Stipulation of Facts excludes. The Government cannot use excluded conduct to overcome a binding policy presumption favoring non-imprisonment.

The Government's statutory maximum recommendation breaches the plea agreement in an additional respect: it asks the Court to impose the most severe sentence of imprisonment on a defendant for whom the Commission's binding policy guidance states that "a sentence other than imprisonment ... is generally appropriate."

### F. Breach Five: The Government's High-End Recommendation Is Only Coherent If Based on Excluded Conduct

The Government's recommendation for the statutory maximum confirms what the preceding sections demonstrate: the Government's sentencing recommendation depends entirely on conduct the Stipulation of Facts excludes. The Section 3553(a) factors, properly applied to the offense of conviction, cannot support a 12-month term of imprisonment.

Section 3553(a) commands that courts impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing. In determining the appropriate sentence within a guideline range, the court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. Section 3553(a)(1). Critically, the "offense" to be considered is the offense of conviction, not dismissed allegations, not abandoned theories, and not conduct the Government chose not to prosecute.

Here, the offense of conviction is accepting a promise of a foreign national contribution valued at $15,000 to $25,000. No money ever changed hands. No contribution

was ever received. No official action was ever taken. The offense was complete upon acceptance of a promise that was never fulfilled.

The defendant's history and characteristics strongly favor the low end of the guideline range and an alternative to imprisonment. She is a first offender with no criminal history. She served Puerto Rico for 38 years in public service, including decades as a prosecutor, Woman's Advocate (*Procuradora de las Mujeres*), Attorney General, and Governor.

Applying the Section 3553(a) factors solely to the offense of conviction does not support the statutory maximum term of imprisonment. A promise valued at $15,000 to $25,000 that was never fulfilled is a misdemeanor. Compared to the original seven-count felony indictment alleging bribery and honest services fraud, the offense to which defendant pled is far less serious. The defendant has no criminal history. General deterrence is adequately served by conviction itself: a former Governor now stands convicted of a federal offense. Specific deterrence is unnecessary for a first offender whose 38-year career of public service demonstrates this was an aberration, not a pattern. There is no need to protect the public from a 65-year-old former public servant with no history of criminal conduct.

Critically, avoiding unwarranted disparities weighs heavily in favor of a sentence at the low end or probation. Similarly situated first offenders convicted of campaign finance violations routinely receive probation. Indeed, there appears to be no precedent for a misdemeanor or single-count felony conviction under 52 U.S.C. Section 30121 that

resulted in a prison sentence.[4] And, as a zero-point offender in Zone B, the Guidelines indicate that a sentence other than imprisonment is generally appropriate. U.S.S.G. § 5C1.1, cmt. n.9. See also: 28 U.S.C. § 994(j).[5]

The only way to justify the statutory maximum is to import the bribery and corruption allegations from the dismissed indictment, precisely what the Government's Sentencing Memorandum does. By characterizing the offense as "corrupting" the electoral process, referencing hundreds of thousands of dollars in expenditures, and arguing "incalculable intangible harm," the Government has constructed a sentencing argument that is coherent only if the Court considers conduct that the Stipulation of Facts affirmatively excludes.

This is not proper sentencing advocacy within the bounds of the plea agreement. This is using dismissed conduct to artificially inflate the seriousness of the offense and push the Court toward a sentence that the offense of conviction cannot support. The First

---

[4] See, e.g., United States v. Chase, 14-cr-926 (S.D. Cal.) (eight misdemeanor counts of Section 30121 violations; sentenced to probation and fine); United States v. Lee, 99-cr-327 (C.D. Cal.) (misdemeanor aiding and abetting foreign contributions; probation and community service); United States v. Rahman, 00-cr-052 (D.D.C.) ($250,000 in illegal foreign contributions; probation); United States v. Kim, 97-cr-726 (C.D. Cal.) (congressman convicted of foreign contribution violations; probation with home detention); United States v. Shehu, 16-cr-308 (D.N.J.) ($80,000 funneled through straw donors, guidelines range 12-18 months; sentenced to probation); United States v. Azano Hester, 14-cr-388 (S.D. Cal.) (misdemeanor conspiracy involving illegal foreign contributions; unsupervised probation); United States v. Avanzato, 08-cr-36 (D.P.R.) (felony conspiracy involving over $180,000 in illegal contributions, guidelines range 24-30 months; sentenced to probation). The only imprisonment cases involved trial convictions with multiple felony counts, fraud, tax evasion, or personal retention of funds. See, e.g., United States v. Benton, 22-cr-98 (D.D.C.) (six felony counts after trial; 18 months); United States v. Zuberi, 19-cr-20037 (C.D. Cal.) (FARA violations combined with tax evasion; $900,000 in concealed foreign contributions; 12 years).

[5] "The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense…"

16

Circuit has made clear that such tactics constitute breach. See: *Mojica-Ramos*, 103 F.4th at 851-52; *Canada*, 960 F.2d at 271.

## IV. REMEDY

"A defendant who has entered into a plea agreement with the government, and himself fulfills that agreement, is entitled to the benefit of his bargain." *Saxena*, 229 F.3d at 6.[6] Courts have "broad discretion to shape remedies for prosecutorial breach." *Mojica-Ramos*, 103 F.4th at 854 (citing *Clark*, 55 F.3d at 14). "The choice of remedy rests with the court…" *Canada*, 960 F.2d at 271.

The Court can remedy the breach prior to sentencing. Defendant respectfully requests that the Court:

> 1. Strike the Government's Sentencing Memorandum in its entirety, or in the alternative, strike those portions that: (a) rely on conduct from the dismissed indictment that is inconsistent with the Stipulation of Facts; (b) reference dollar amounts exceeding the stipulated value of $15,000 to $25,000; or (c) characterize the offense as involving actual receipt of contributions rather than acceptance of a promise; or
>
> 2. Order specific performance by requiring the Government to file an amended sentencing memorandum that presents its recommendation based

---

[6] *See Santobello v. New York*, 404 U.S. 257, 262 (1971) (explaining that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled"). Satisfying this obligation requires more than lip service on a prosecutor's part. *Saxena*, 229 F.3d at 6. The *Santobello* rule "proscribe[s] not only explicit repudiation of the government's assurances, but must in the interests of fairness be read to forbid end-runs around them." *United States v. Voccola*, 600 F.Supp. 1534, 1537 (D.P.R. 1985).

17

solely on the offense of conviction and the stipulated facts, without reference to: (a) the dismissed bribery allegations; (b) amounts exceeding the stipulated value; or (c) alleged expenditures that were never received by defendant.

## V.   CONCLUSION

The Government negotiated a plea agreement with specific boundaries: a campaign finance violation involving acceptance of a promise valued at $15,000 to $25,000, with stipulated facts that exclude any bribery theory. The Government cannot now seek to justify the statutory maximum by importing the bribery conduct it agreed to dismiss instead of taking to trial, referencing amounts twenty-five (25) times greater than the stipulated value, and treating a promise as if it were an actual receipt of contributions that never materialized.

The Government claims this unfulfilled promise caused "incalculable intangible harm." (Dkt. No. 13, at 1, 27). But a promise that was never kept, involving a SuperPAC that never received a dollar and never spent a dollar on defendant's behalf, is not the stuff of incalculable harm. It is a campaign finance violation at the lowest end of the spectrum of culpability, committed by a zero-point offender for whom a sentence of imprisonment is not appropriate under the Guidelines. This is precisely the type of "end-run" that the First Circuit condemned in *Mojica-Ramos*.

WHEREFORE, defendant Vazquez-Garced respectfully prays that the Court GRANT this motion and, accordingly, strike the Government's sentencing memorandum at docket

number 13 and instruct it to file an amended memorandum, if it so chooses, in compliance with the terms of the plea agreement.

In San Juan, Puerto Rico, January 8, 2026.

| | |
|---|---|
| **s/Peter John Porrata**<br>PETER JOHN PORRATA<br>USDC – PR 128901<br>POB 3943<br>Guaynabo, PR 00969-3943<br>Tel. 407-953-9888<br>peterjohnporrata@gmail.com | **s/ Luis A. Plaza-Mariota**<br>Luis A. Plaza-Mariota<br>USDC - PR 124806<br>Luis A. Plaza Law Offices<br>P.O. Box 362122<br>San Juan, PR  00936-2122<br>Tel: 787-764-0310<br>plaza@luisplazalaw.com |
| **s/ Edgar Sanchez Mercado**<br>EDGAR SANCHEZ MERCADO<br>USDC-PR 227004<br>Tel. 787-565-0916<br>esmlawoffice@gmail.com<br><br>255 Avenida Ponce de León, Suite 1210<br>San Juan, Puerto Rico 00918-1475 | **s/ Ignacio Fernández de Lahongrais**<br>IGNACIO FERNANDEZ DE LAHONGRAIS<br>USDC - PR 211603<br>Tel. 787-923-5789<br>ignacio@bufetefernandezalcaraz.com<br><br>255 Avenida Ponce de León, Suite 1210<br>San Juan, Puerto Rico 00918-1475<br><br>*Attorneys for Wanda Vazquez Garced* |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this same date, the undersigned attorney filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for all parties in this action.

        **s/ Ignacio Fernández de Lahongrais**
        IGNACIO FERNANDEZ DE LAHONGRAIS
        USDC - PR 211603
        Tel. 787-923-5789
        ignacio@bufetefernandezalcaraz.com

        255 Avenida Ponce de León, Suite 1210
        San Juan, Puerto Rico 00918-1475