## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>WANDA VÁZQUEZ-GARCED,<br>Defendant. | CRIMINAL NO. 25-296 (SCC) |

## RESPONSE IN OPPOSITION TO MOTION TO STRIKE

Defendant Wanda Vazquez-Garced continues to display a reckless disregard for the truth. To make matters worse, she does not believe that campaign finance violations that corrupt the electoral process and cause incalculable intangible harm to the people of Puerto Rico are serious. The United States disagrees.

## **I. INTRODUCTION**

After pleading guilty to violating 52 U.S.C. § 30121, Vazquez-Garced made public comments to the local press in an attempt to shift the blame to others within her gubernatorial campaign. *See* ECF #13, p. 18-19. Now, Vazquez-Garced claims that she never actually accepted a campaign contribution from a foreign national. *See* ECF #29, p. 3 ("the promised contribution was never actually provided."). But, you can't cover the sun with your hand.  ("no se puede tapar el sol con la mano.")

This false claim is in direct conflict with the Stipulated Facts admitted by Vazquez-Garced in the Plea Agreement as well as other admissions contained in Vazquez-Garced's motion to strike. In an attempt to support the motion to strike the government's sentencing memorandum, Vazquez-Garced makes additional false claims, including a) that the indictment in CR 22-342(SCC) has been dismissed; b) that the government justifies it's sentencing recommendation on a bribery

theory; c) that the government "realized the [bribery] theory was factually and legally flawed"; d) that campaign finance violations and bribery violations are mutually exclusive; and e) that the government's guideline recommendation of 12 months of imprisonment is not made in "good-faith." *See* ECF #29, p. 1-2, 7-8, 13.

The United States has recommended a sentence of 12 months of imprisonment, which is a sentence within the applicable guideline range calculated in the Plea Agreement and the Amended Presentence Investigation Report (PSR). The United States has not breached the Plea Agreement and has not otherwise engaged in any "impermissible tactics." The United States has advocated for a sentence which is specifically permitted under the express terms of the Plea Agreement. And, as legally required, the United States has complied with its obligation to provide the Court with reliable information relevant to sentencing.

By statute, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. §3661. Further, the United States has a "solemn duty to disclose information material to the court's sentencing determinations." *United States v. Saxena*, 229 F.3d 1, 5 (1ˢᵗ Cir. 2000), *citing United States v. Hogan*, 862 F.2d 386, 389 (1ˢᵗ Cir. 1988). By setting forth the undisputed and indisputable facts underlying the campaign finance violations committed by the defendants, the United States met its obligations to the Court and honored the terms of the Plea Agreement. The United States has simply not breached the Plea Agreement.

It is Vazquez-Garced who has shifted blame, mispresented the law, failed to accept responsibility, and otherwise sought to be sentenced without the Court taking into account the facts of this case or the who, what, where, why, when, and how of this campaign finance violation. The

Court is required to consider the history and characteristics of Vazquez-Garced, the seriousness of the offense, and the need for deterrence. *See generally* 18 U.S.C. §3553(a). The United States' Sentencing Memorandum addresses those factors and provides the Court with the various arguments supporting a sentence of 12 months of imprisonment.

## II. STIPULATED FACTS

Defendant Vazquez-Garced pleaded guilty to violating 52 U.S.C. §30121, which prohibits soliciting, accepting, or receiving a contribution defined in 52 U.S.C. §30101(8) or an express or implied promise to make a contribution from a foreign national. When Vazquez-Garced pleaded guilty, she executed the Plea Agreement and admitted the Stipulation of Facts contained therein. ECF #6, p. 11-12.

The Stipulation of Facts provides in full:

> In conjunction with the submission of the accompanying Plea Agreement in this case, Defendant Wanda Vazquez-Garced admits that she is guilty as charged in the Information and admits to the following:
>
> From on or about March 2020 to on or about June 2020, Defendant Wanda Vazquez-Garced was a candidate in the New Progressive Party's primary election to select its nominee for Governor of Puerto Rico in the 2020 general elections. Defendant Julio Herrera-Velutini, a foreign national, promised to contribute money and other things of value to support Vazquez's campaign. The parties stipulate for purposes of the sentencing guidelines that the value of the promised contribution was more than $15,000 but did not exceed $25,000. Defendant Vazquez-Garced did not accept the political contribution for her personal money gain; but for her political committee to support her candidacy. **Vazquez-Garced was aware that foreign nationals could not contribute money or other things of value but acted knowingly and willfully to accept the promised contributions.**
>
> Had this matter proceeded to trial, the United States would have presented evidence through the testimony of witnesses, as well as physical and documentary evidence, which would have proven beyond a reasonable doubt that **Defendant Vazquez-Garced did knowingly and willfully accept political contributions from a foreign national.**

*Id* (*emphasis added*).

The admitted Statement of Facts makes clear that Vazquez-Garced accepted the political contributions that were promised by Herrera-Velutini. While Vazquez-Garced is now attempting to distance herself from her admission, the language of the stipulation of facts of clear. "**<u>Vazquez-Garced was aware that foreign nationals could not contribute money or other things of value but acted knowingly and willfully to accept the promised contributions.</u>**" *Id***.** Vazquez-Garced accepted the contributions that Herrera-Velutini promised.

If there was any doubt, Vazquez-Garced admitted that the United States would have proven beyond a reasonable doubt that she "**<u>did knowingly and willfully accept political contributions from a foreign national.</u>**" *Id.*

Despite the clarity of the admission, which was carefully negotiated by her various defense attorneys, Vazquez-Garced now seems to argue that "the promised contribution was never actually provided." ECF #29, p. 3. This statement is false and directly contradicts the statement of facts admitted via the Plea Agreement. Not only does Vazquez-Garced contradict the plain language of the admitted Statement of Facts, she contradicts the Offense Conduct described in the PSR and her own motion.

Vazquez-Garced's own motion to strike concedes that **<u>Vazquez-Garced "accepted the contribution 'for her political committee to support her candidacy'"</u>**. ECF #29, p. 7 (*emphasis added*). In that same motion, Vazquez-Garced attempts to shift blame to Defendant Julio Herrera-Velutini and assert an "ostrich defense" that she had her head in the sand was not aware of what was happening. She claims she had no idea how much money Herrera-Velutini was spending on consulting fees, legal services and other campaign-related expenses on her behalf. Vazquez-Garced states that she "did not control Herrera", "did not direct his spending", nor did she "know the amounts he was paying to Waters, CT Group, or anyone else." ECF # 29, p. 10. Vazquez-

Garced served as the Governor of Puerto Rico, as Secretary of Justice, and a district attorney for 20 years. While she may not have known the exact amounts, she met with Dane Waters and knew Herrera-Velutini was illegally paying him and other expenses in support of her campaign.

With respect to the acceptance of the illegal political contribution, the PSR is consistent with the admitted facts and describes the following pertinent conduct:

19. Herrera financially contributed to Vázquez's primary campaign by 1) hiring CT Group to conduct opinion research and paying for it directly through Britannia Global Investments, and 2) forming a SuperPAC to assist Vázquez's campaign, including paying consulting fees to the SuperPAC's founder and director, Dane Waters. Regarding expenses related to the SuperPAC, Herrera and Rossini agreed that Herrera would pay Rossini's LLC, MTR Associates, from which Rossini would then pay the SuperPAC's expenses….

32. CT Group produced the report to Rossini via email on April 8, 2020. Rossini shared the report with Blakeman, who shared it with [], [], and Vázquez confidant and advisor [] via Telegram. In his message to Vázquez's team, Blakeman wrote that they should "look at it closely," as the report contains their next steps in the upcoming months. The following day, Blakeman sent a message to the same Telegram group, asking if anyone had read the report. [] responded, "On it." Moreover, [] shared the report directly with Vázquez, writing that the "first survey is in." Vázquez responded that she read the documents and that "they look[ed] pretty good." She then lamented how hard the race against Pierluisi would be due to his media support.

35. Blakeman confirmed that Vázquez was aware that in exchange for appointment of Rodriguez, Vázquez would continue to get financial support via Mr. Herrera. Similarly, [] confirmed that it was clear to Vázquez that Herrera offered financial support for Vázquez' campaign.

40. On Thursday, May 21, 2020, Waters flew to San Juan from Florida, where he had been holed up while awaiting orders from Herrera and Rossini to travel to the island. The following morning, Waters met with Blakeman at the La Concha hotel where they discussed the strategy for the SuperPAC. Approximately two weeks later, Waters met with Vázquez at her office, where they discussed her vision for Puerto Rico, why she wanted to run for election, and things she could do to better position her campaign.

ECF #25, p. 6-9, ¶ 19, 32, 36.[1]

---

[1] This conduct is consistent with the statutory language defining prohibited contributions from a

All objections to the PSR were required to be filed within fourteen days from disclosure of the PSR per Local Criminal Rule 132(b)(3). Vazquez-Garced has filed no objection to the December 5, 2025, PSR and has intentionally waived any objection thereto, including any objection to the facts or guideline application.

At this point, the stipulated facts are clear. Vazquez-Garced has admitted that she did knowingly and willfully accept political contributions from a foreign national. This explicit admission from the Plea Agreement is supported and detailed via the offense conduct set forth in the PSR.  It is disingenuous for Vazquez-Garced to now contradict those admitted facts and seek relief from the Court based on material misrepresentations regarding the offense conduct. It also could be deemed to be a failure to accept responsibility. A defendant who "falsely denies, or frivolously contests" relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility. *United States v. Gonzalez*, 12 F.3d 298, 300 (1ˢᵗ Cir. 1993). *See* U.S.S.G. 3E1.1, Application Note 1(A).

### III. FALSE CLAIMS

Vazquez-Garced's motion to strike contains additional false claims, as outlined below:

Status of CR 22-342(SCC)

At various points, Vazquez-Garced incorrectly states that the indictment in CR 22-342 (SCC) has been dismissed.  *See* ECF #29, p. 1, 3, 6, 7, 8, 14, 16-18. This is factually false.

The Indictment against Vazquez-Garced in CR 22-342(SCC) has not been dismissed. A review of the docket reflects that no dismissal has been entered. The United States only intends to move to dismiss that case at the conclusion of the sentencing in CR 25-296(SCC) and the Court

---

foreign national at 52 U.S.C. §30101(8)(A)(ii) to include "the payment by any person of compensation for the personal services of another person which are rendered to a political committee without charge for any purpose."

has not granted any motions to dismiss in CR 22-342(SCC). If Vazquez-Garced breaches the plea

agreement or is permitted to withdraw her guilty plea in CR 25-296(SCC), the United States would

not be required to move to dismiss the Indictment in CR 22-342(SCC). In that scenario, the United

States could pursue a bribery conviction at trial in CR 22-342(SCC).

<u>Justifying the Sentence</u>

Vazquez-Garced falsely claims that "the Government's Sentencing Memorandum seeks to

justify the statutory maximum term of imprisonment by (1) importing bribery and corruption

allegations…" ECF #29, p. 1. That allegation is false. The United States' Sentencing Memorandum

does not argue for a punishment based on Vazquez-Garced receiving bribes. The sentencing

recommendation is based entirety on the count of conviction, a violation of 52 U.S.C. §30121. The

United States' Sentencing Memorandum recites the sentencing guideline calculations from the

Plea Agreement and the PSR, both of which resulted in a Total Offense Level of 10 with an

applicable range of 6-12 months of imprisonment. ECF #13, p. 2.

These calculations are based on a stipulated contribution amount of more than $15,000 but

less than $25,000, a fact made explicit by the United States in the Plea Agreement and the

Sentencing Memorandum. At no point in time did the United States attempt to justify a sentence

recommendation in this case based on any other amount.[2]

If the government's sentencing recommendation was based on a bribery theory, the

guideline sentence would have been calculated pursuant to U.S.S.G. §2C1.1 and could have been

at least as high as Total Offense Level 15 with a sentencing range of 18-24 months of

imprisonment. No such calculation was ever referenced or submitted for the Court's consideration.

---

[2] The United States did make reference to other campaign contributions made in Puerto Rico in 2020 and other historic violations to illustrate the seriousness and pervasiveness of these offenses. ECF #13, p. 20-23.

The Sentencing Memorandum discusses a summary of the facts related to the criminal conduct. *Id* at p. 3-13. At no point in time during the discussion of the facts does the United States use the term "bribe" or "kickback" to describe Vazquez-Garced's activity. The United States referenced admissions from the Plea Agreement's Statement of Facts and facts set forth in the PSR. The facts outline the illegal foreign campaign contributions knowingly and willfully accepted by Vazquez-Garced from a Venezuelan banker, who was engaged in a regulatory audit by OCIF. The discussion of the facts provide context for why Herrera was willing to make illegal campaign contributions, how he made them via a third-party (Rossini), the services rendered, and why Vazquez-Garced accepted the illegal contributions. Despite Vazquez-Garced's attempts to hide from the facts of this case, and as noted above, the United States has an obligation to address the facts so as to justify its sentencing recommendation. Similarly, the Court has a duty to consider the relevant facts regarding how and why the crime was committed when determining an appropriate sentence. Here, the United States' recommendation is made based on the violation of 52 U.S.C. §30121 and the Court will sentence based on the nature, circumstances, and seriousness of that offense.

The United States' Sentencing Memorandum also discusses Vazquez-Garced's background before addressing the various §3553(a) factors. *Id* at p. 13-17. Nothing about that discussion is inappropriate or a mischaracterization of the facts. Regarding the nature and circumstances of the offense, the United States argued that "Defendant undermined the integrity of an island-wide primary election for governor by illegally agreeing and accepting to receive illegal foreign campaign contributions. In doing so, she subverted the Federal Election Campaign Act, 52 U.S.C. § 30101, et seq., by engaging in a scheme to illegally obtain political campaign contributions from Julio Herrera-Velutini. The harm here is substantial. Defendant Vazquez-

Garced's illegal political scheme undermined the faith of the people of Puerto Rico in the transparency of their electoral process." *Id.* at p. 15-16.

With respect to seeking a high-end recommendation, the United States again referenced the importance of enforcement of campaign finance laws. "A high-end-of-the-guidelines sentence would respect Congress's recognition of the 'serious nature of [FECA] violations" as well as the Sentencing Commission's determination that FECA offenses merit special treatment because they "corrupt[] the elective process.'" *Id.* at p. 13.

As can be determined from a reading of the United States' Sentencing Memorandum, the sentencing recommendation is based entirely on the count of conviction and the context regarding how and why that campaign finance crime was committed. It is entirely appropriate for the United States to address these facts contained in the PSR as a part of the §3553(a) factors when making a sentencing recommendation.

<u>Strength of Bribery Theory</u>

Vazquez-Garced falsely claims the United States "realized the [bribery] theory was factually and legally flawed…" ECF #29, p. 7. This claim is false and strikingly similar to Vazquez-Garced's false claim in August 2025 that the bribery case had "collapsed." *See* CR 22-342(SCC), ECF #887, p. 2. The United States' response remains consistent. The indictment in CR 22-342(SCC) did not "collapse" and the bribery theory is not factually nor legally flawed. The United States stands ready to proceed to trial, if necessary. *See generally* CR 22-342(SCC), ECF #888.

<u>Campaign Finance Co-Existing with Bribery Violations</u>

Vazquez-Garced also makes a false claim regarding the inability of campaign finance violations to co-exist with bribery violations. Specifically, Vazquez-Garced claimed that

"[c]ampaign finance violations and bribery represent mutually exclusive legal theories. Either a contribution was made to aid a campaign, or it was part of a corrupt quid pro quo involving official action." ECF #29, p. 8. It is not clear why Vazquez-Garced or her team of defense attorneys believes this assertion to be true. Further, Vazquez-Garced does not provide any legal support for this theory.

If a bribe payment is expressly made by a foreign national to a campaign in exchange for an official act, the illegal campaign contribution is both an illegal campaign contribution and a bribe. There is nothing mutually exclusive about those offenses.

In fact, the United States Supreme Court has specifically addressed how campaign contributions can form the basis for bribe payments. *See McCormick v. United States*, 500 U.S. 257 (1991). The Supreme Court found that bribe payments in the form of political contributions must be accompanied by "an explicit promise or undertaking by the official to perform or not an official act." *Id*. at 272. The Supreme Court further concluded that "a quid pro quo is [ ] necessary for conviction under the Hobbs Act when an official receives a campaign contribution." *Id*. at 274. If those requirements are met and the person making the bribe payment via campaign contribution is a foreign national as defined by 52 U.S.C. §30121(b), then both campaign finance violations and bribery violations have occurred.

Simply put, Vazquez-Garced's willful and knowing acceptance of illegal campaign contributions from a foreign national, Venezuelan banker Herrera-Velutini, is not a defense to the facts included in the PSR, the facts summarized in the United States' Sentencing Memorandum, nor the allegations of the Indictment in CR 22-342(SCC).

<u>Good-Faith Recommendation of 12 Months of Imprisonment</u>

The United States recommends that Vazquez-Garced be sentenced to a term of imprisonment of 12 months. This recommendation is based on the various §3553(a) factors discussed in the United States' Sentencing Memorandum. ECF #13. There is nothing improper about this recommendation nor does it represent a breach of the Plea Agreement. Like many other cases, the United States and the defendant disagree on an appropriate punishment. That is not a basis to conclude that the United States' recommendation "is not a good-faith recommendation 'within' the Guideline framework…." ECF #29, p. 13.

The Plea Agreement explicitly provides that the United States and Vazquez-Garced recommend an advisory Guideline calculation yielding a Total Offense Level of 10. ECF #6, p. 4. That is exactly the Guideline calculation used by the United States and recommended in the Sentencing Memorandum. ECF # 13, p. 2. It is the same Guideline calculation contained in the PSR. ECF #25, p. 13.

The applicable sentencing range for a defendant in criminal history category I with a Total Adjusted Offense Level of 10 is six to 12 months of imprisonment. *See* U.S.S.G. Sentencing Table. That is exactly what is contained in the PSR.

> Guideline Provisions: Based upon a total offense level of 10 and a criminal history category of I, the guideline imprisonment range is six to 12 months. Since the applicable guideline range is in Zone B of the Sentencing Table, the minimum term may be satisfied by (1) a sentence of imprisonment; (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in USSG §5C1.1(e), provided that at least one month is satisfied by imprisonment; or (3) a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment according to the schedule in USSG §5C1.1(e). USSG §5C1.1(c).

ECF #25, p. 22, ¶ 106.

The United States' recommendation that Vazquez-Garced be sentenced to 12 months

imprisonment is within the applicable Guideline range calculated by the Plea Agreement and the PSR. The Plea Agreement expressly provides that the United States "reserves its right to recommend a sentence within the applicable guideline range calculated" in the Plea Agreement. ECF # 6, p. 4, ¶ 8. The United States has done so by recommending a sentence of 12 months of imprisonment. This should be no surprise to Vazquez-Garced as she read, reviewed, and signed the Plea Agreement upon the advice of counsel, knowingly and intentionally pleaded guilty before District Judge Carreño-Coll under oath, and acknowledged the terms and conditions of the Plea Agreement, specifically including the sentencing recommendation of the United States.

The United States acknowledges the commentary to U.S.S.G. §5C1.1. But, the commentary does not bind the actions of the Court nor the arguments of the United States. Application Note 9 merely suggests a scenario where a non-custodial sentence "is generally appropriate." The United States has argued and reiterates its argument, that the §3553(a) factors warrant a sentence of imprisonment and that a non-custodial sentence is not appropriate in this case. That recommendation is wholly consistent with the terms of the Plea Agreement, where the United States reserved the right to seek a sentence of imprisonment from six to 12 months.

## IV. DISCUSSION

The United States has not breached the Plea Agreement. The United States requests a guideline sentence, which it specifically reserved the right to recommend via the Plea Agreement. The United States recommends a sentence of 12 months of imprisonment based on the nature, circumstances, and seriousness of the offense of conviction, i.e., the knowing and willful acceptance of political contributions by Vazquez-Garced from a foreign national. In doing so, Vazquez-Garced corrupted the Puerto Rico gubernatorial election process. Vazquez-Garced agrees that "foreign intervention can be characterized as corrupting the electoral process.." ECF #29, p.

6. But she frivolously denies that she accepted anything of value or that her illegal conduct is serious.

The offense of conviction is particularly serious given that Vazquez-Garced undermined the integrity of an island-wide primary election for governor, inter alia, by illegally agreeing and accepting to receive illegal foreign campaign contributions. In doing so, she subverted the Federal Election Campaign Act, 52 U.S.C. § 30101, et seq., by engaging in a scheme to illegally obtain political campaign contributions from Julio Herrera-Velutini. The harm here is substantial. Defendant Vazquez-Garced's illegal political scheme undermined the faith of the people of Puerto Rico in the transparency of their electoral process.

In the Bipartisan Campaign Reform Act of 2002, Congress specifically directed that the U.S. Sentencing Commission promulgate a new guideline or amend an existing guideline "for penalties for violations of the Federal Election Campaign Act of 1971 and related elections laws," taking into account the "serious nature of such violations and the need for aggressive and appropriate law enforcement action to prevent such violations." Pub. L. No. 107-155, § 314 (2002) (emphasis added). Soon afterward, the Sentencing Commission promulgated Amendment 648, which first introduced U.S. Sentencing Guideline § 2C1.8. In explaining the basis for creating U.S. Sentencing Guideline § 2C1.8, the Commission explained that campaign finance crimes "are more serious [than traditional fraud schemes] due to the additional harm, or the potential harm, of corrupting the elective process." U.S. Sentencing Commission, Amendment 648, Reason for Amendment.

Vazquez-Garced does not believe her illegal conduct is serious and appears to disagree with the United States. *See* ECF #29, p. 8 ("When it invokes 'corruption' and 'incalculable intangible harm'… it is not describing campaign finance violation. It describes the bribery and

honest services fraud ….") That disagreement is not a basis to strike the United States' argument. The United States will continue to advocate for justice in this case and for the Court's careful consideration of the various §3553(a) factors, including the nature, circumstances, and seriousness of the offense. Despite Vazquez-Garced's calls for the Court to disregard those relevant uncontested facts set forth in the Plea Agreement and PSR, the who, what, where, when, why, and how of this criminal violation is material to the Court's consideration.

## V. CONCLUSION

The United States requests that the Court deny Vazquez-Garced's motion to strike and make a specific finding that the United States' Sentencing Memorandum was not impermissibly filed in violation of the terms of the Plea Agreement.

**WHEREFORE**, the United States requests that Defendant Wanda Vazquez-Garced's Motion to Strike be denied and a specific non-breach finding be made by the Court.

Respectfully submitted on this 13th day of January, 2026 in San Juan, Puerto Rico.

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which will notify counsel of record.

<div style="margin-left:40%">

W. STEPHEN MULDROW
United States Attorney

 s/ Seth A. Erbe
SETH A. ERBE
USDC-PR No. 220807
Assistant United States Attorney
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Ave.
San Juan, PR 00918
Tel. (787) 766-5656
seth.a.erbe@usdoj.gov

</div>