# THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff | |
| Vs | Criminal No. 22-cr-296 (SCC) |
| WANDA VAZQUEZ GARCED, | |
| Defendants. | |

## REPLY TO THE GOVERNMENT'S RESPONSE IN OPPOSITION

TO THE HONORABLE COURT:

COMES NOW defendant Wanda Vázquez-Garced, through her attorneys, and respectfully submits this Reply to the Government's Response in Opposition (Dkt. No. 31).

The government makes reference to the wise and well-known *dicho pueblerino* "*No se puede tapar el cielo con la mano*." ("you cannot hide the sky with your hand." That is most certainly true. No amount of legal rhetoric can obscure what is obvious: the Government seeks to have Mrs. Vázquez sentenced by this Court, and judged in the court of public opinion, not for the misdemeanor campaign finance violation to which she pled guilty, but for the bribery and corruption allegations from CR 22-cr-342 that it agreed to dismiss.

The Government's Response, filed yesterday, confirms rather than refutes the breach. Its aggressive rhetoric cannot obscure that it continues to advocate for the statutory maximum based on conduct that lies outside the plea agreement's negotiated boundaries.

*Reply*

-2-

## I.    THE GOVERNMENT CONFLATES 'ACCEPTING A PROMISE' WITH 'ACCEPTING CONTRIBUTIONS'

The Government's central argument rests on a semantic sleight of hand. It asserts that Mrs. Vázquez 'accepted the political contributions that were promised' (Dkt. No. 31, at 4), conflating acceptance of a *promise* with acceptance of actual *contributions*. The statute, however, criminalizes both separately: 52 U.S.C. § 30121(a)(2) prohibits accepting 'a contribution or donation' *or* 'a promise to make a contribution or donation.' These are distinct offenses.

The Stipulation of Facts confirms this distinction. The parties stipulated that 'the value of the *promised contribution* was more than $15,000 but did not exceed $25,000.' (Dkt. No. 6, at 11) (emphasis added). The stipulation quantifies the *promise*, not actual contributions received. This was not careless drafting—it reflects the nature of the offense. Regardless of the rhetoric, two facts remain indisputable: no foreign money ever made it to her campaign and actionable help was not provided to the campaign.

## II.    OBJECTIONS HAVE NOT BEEN WAIVED—THE INFORMAL RESOLUTION PROCESS JUST CONCLUDED

The Government argues that Mrs. Vázquez 'intentionally waived any objection' to the PSR by not filing within fourteen days under Local Criminal Rule 132(b)(3). (Dkt. No. 31, at 6). This argument is factually incorrect and legally inapposite.

*Reply*

-3-

First, the Government's factual premise is wrong. On December 2, 2025, the U.S. Probation Officer confirmed in writing that defendant's 'objections and corrections to the [offense conduct] were timely received' and that the Government 'also was made aware by email.' The Probation Officer further stated: 'You already complied with your objections. However, if after the amended PSR is filed this week you have additional corrections/objections, you still can file or submit objections to the same.' On December 23, 2025, counsel for Vazquez Garced met once more with the probation officer and provided her with additional suggested language and parts of the discovery that contradicted the government's version of the facts. The probation officer said that she will take it into consideration and, if appropriate, will file a second amended PSR report.

On January 7, 2026, the Probation Officer emailed defense counsel and informed us that she would not be filing a second amended PSR report, thus concluding the informal resolution process and that she 'will be submitting the addendum of PSR next week.' Defendant filed her Motion to Strike on January 8, 2026—the day after the informal process concluded and before the addendum was submitted.

Second, the Government conflates two distinct procedural vehicles. A motion to strike a sentencing memorandum for breach of the plea agreement is not a PSR objection— it is a contract claim asserting that the Government has violated its obligations under a binding agreement. The First Circuit's framework for evaluating breach—the 'totality of the circumstances' analysis examining whether the government's 'overall conduct' is

'reasonably consistent with making the promised recommendation'—is entirely separate from the procedure for disputing factual or guideline calculations in the PSR. *See Mojica-Ramos*, 103 F.4th at 850.

## III.    THE    GOVERNMENT'S    THREAT    TO    ACCEPTANCE    OF RESPONSIBILITY IS BOTH FACTUALLY UNFOUNDED AND LEGALLY IMPROPER

The Government suggests that Mrs. Vázquez may lose acceptance of responsibility credit if she continues to challenge the Sentencing Memorandum. (Dkt. No. 31, at 6). This threat fails on both factual and legal grounds.

### A. The Government Selectively Quotes from a Moment of Extreme Stress and Ignores the Full Context

The Government quotes Mrs. Vázquez's statements from August 27, 2025—made immediately after pleading guilty—to suggest she blamed others. (Dkt. No. 31, at 3-4). This selective quotation ignores both the context and the complete content of what she said.

First, the *context*: Mrs. Vázquez had just emerged from three years under federal indictment, facing conspiracy and bribery charges that could have resulted in twenty years' imprisonment. She had just become the first Governor of Puerto Rico in history to plead guilty to a crime. She spoke to the press in a moment of extreme stress and anguish, processing a profoundly difficult experience in real-time before cameras.

Second, the *complete content*: The Government quotes her saying she 'trusted people who were near me.' But it is a fact that she did trust people who failed her. That in no way means that she is not taking responsibility for her own actions. She also said: 'I am here, *accepting the responsibility* because, well, I was the president of the party, *I was the candidate*.' Mrs. Vázquez *accepted responsibility* in the same breath that she expressed disappointment in political advisors who introduced her to Herrera and failed to verify the legality of his involvement. The latter does not negate the former—it provides context for how a former prosecutor with 38 years of distinguished public service found herself in this situation.

### B. Vázquez's Formal Acceptance Before the Court and the Probation Officer

The Guidelines are clear about what matters for acceptance of responsibility: the defendant's statements *to the Court and in formal proceedings*—not selective public statements made in emotional moments. U.S.S.G. § 3E1.1, Application Note 5 provides that 'the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility.' The Commentary further provides that 'a determination that a defendant has accepted responsibility will be based primarily upon *pre-trial statements and conduct*'—referring to formal proceedings, not media interviews.

Here, Mrs. Vázquez's formal statements are unambiguous. In Court on August 27, 2025, when asked by Judge Carreño-Coll whether she accepted guilt, she responded 'Sí, su señoría'—yes, Your Honor. On September 5, 2025, she was interviewed by the Probation

Officer for the Presentence Investigation Report. The Amended PSR (Dkt. No. 25) reflects her unequivocal acceptance:

> '[T]he defendant accepted responsibility for her involvement in the instant offense. She mentioned that even though the offense is not a crime at the state level, she knew Herrera was a foreign contributor for her campaign and she should have not accepted his promise.'

The PSR further notes that Mrs. Vázquez 'tearfully mentioned feeling bad and disappointed with herself for what she did, for having put her family and the people in this position.' She stated: 'It was my error.' And most directly: 'It was an offer, and I accepted it.'

Based on this interview and the totality of circumstances, the Probation Officer concluded: '*The defendant has clearly demonstrated acceptance of responsibility*.' (Dkt. No. 25, ¶ 62). The Government did not object to this finding.

The Government's implicit threat conflates two entirely separate issues. The consequence of failing to demonstrate acceptance of responsibility is loss of the two level reduction under U.S.S.G. § 3E1.1. It is *not* a free pass for the Government's breach of the plea agreement. Whether Mrs. Vázquez qualifies for acceptance credit and whether the Government violated its contractual obligations are independent legal questions governed by different standards. The Government cannot cure its breach by threatening collateral consequences to the defendant.

**B. Challenging the Government's Legal Position Is Not Inconsistent with Acceptance of Responsibility**

The Guidelines are clear: a defendant may challenge legal conclusions without losing acceptance of responsibility credit. U.S.S.G. § 3E1.1, Application Note 1(A) explicitly provides that 'a defendant is not required to volunteer, or affirmatively admit, relevant conduct *beyond the offense of conviction*' and 'may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction.' The First Circuit has held that 'a defendant may challenge legal conclusions without losing acceptance credit.' *United States v. Mariano*, 983 F.2d 1150, 1157 (1st Cir. 1993).

Mrs. Vázquez has not denied her guilt. She pled guilty. She admitted in Court that she accepted a promise of a contribution from a foreign national. She tearfully accepted responsibility to the Probation Officer. What she *has* done is challenge the Government's *legal* position that it can justify the statutory maximum by importing allegations from a dismissed indictment that the Stipulation of Facts affirmatively excludes. This is a legal challenge to the scope of the plea agreement—not a denial of factual guilt.

Moreover, Mrs. Vázquez's statement that 'there was no bribery' is not a false denial—it is an accurate statement of fact.

## IV.    THE GOVERNMENT CANNOT USE ITS DUTY OF CANDOR TO CIRCUMVENT THE PLEA AGREEMENT

The Government invokes 18 U.S.C. § 3661 and its 'solemn duty to disclose information material to the court's sentencing determinations.' (Dkt. No. 31, at 2). This argument proves too much. The same First Circuit case the Government cites—*United States v. Saxena*, 229 F.3d 1 (1st Cir. 2000)—explicitly holds that a prosecutor '*may not attempt to use one duty as an instrument for thwarting the other*.' *Id.* at 6.

The Government cannot use its duty of candor to the Court or to the Probation Officer as 'an instrument for thwarting' its plea agreement obligations. *Id.* That is precisely what has occurred here. The Government provided the Probation Officer with the very bribery allegations it agreed to dismiss, and those allegations now appear in the PSR's offense conduct narrative. The Government then relies on that PSR narrative—which it crafted—to justify the statutory maximum. This is circular reasoning that circumvents the plea agreement's negotiated boundaries.

As defendant's counsel explained in his October 28, 2025 letter to the Probation Officer, which the Government received: 'Allowing the PSR to recite as established fact the very quid pro quo and official act allegations the government agreed to dismiss—and which the stipulation affirmatively excludes—would render the factual stipulation meaningless and give the government the sentencing benefit of convictions it agreed to abandon.'

## V.     THE     GOVERNMENT'S     McCORMICK     ARGUMENT     PROVES DEFENDANT'S POINT

The Government cites *McCormick v. United States*, 500 U.S. 257 (1991), to argue that campaign contributions *can* constitute bribes when accompanied by an explicit quid pro quo. (Dkt. No. 31, at 10). This is precisely correct—and precisely why the Government abandoned its bribery prosecution.

*McCormick* requires proof of 'an explicit promise or undertaking by the official to perform or not perform an official act.' 500 U.S. at 272. The Government chose to abandon this theory. The parties then negotiated a misdemeanor plea to a campaign finance violation, that, by definition under the Stipulation of Facts, involves accepting a contribution 'for her political committee to support her candidacy,' *not* 'for her personal monetary gain.' (Dkt. No. 6, at 11).

The Government cannot have it both ways. Either there was an explicit quid pro quo (bribery) or there was not (campaign finance violation). The Stipulation of Facts resolves this question: the contribution was for campaign purposes, not corrupt purposes. The Government's attempt to infuse its sentencing recommendation with the very bribery theory it abandoned is the definition of an 'end-run' around the agreement's negotiated boundaries. *See Mojica-Ramos*, 103 F.4th at 851-52.

## VI.  THE GOVERNMENT'S 'NOT YET DISMISSED' ARGUMENT PROVES BAD FAITH

The Government emphasizes that the indictment in CR 22-342(SCC) 'has not been dismissed' and argues this permits continued reference to the bribery allegations. (Dkt. No. 31, at 6-7). This Court is well aware of the distinction between a case that has been dismissed and one that the Government has contractually committed to dismiss at sentencing. The argument requires no extended rebuttal.

The plea agreement states: 'In exchange for the Defendant's plea of guilty, the United States agrees to dismiss the Indictment in 22-342 (SCC) *at the conclusion of the sentencing* to Count One of the Information related to this Plea Agreement.' (Dkt. No. 6, § 21) (emphasis added). The indictment has not been dismissed because *sentencing has not yet occurred*. The Government is exploiting the pre-sentencing window—created by the plea agreement's own structure—to import the very allegations it contractually agreed to abandon.

The Government further warns that '[i]f Vazquez-Garced breaches the plea agreement... the United States could pursue a bribery conviction at trial.' (Dkt. No. 31, at 7). This threat confirms the breach rather than excusing it. The Government is simultaneously leveraging the *existence* of the bribery indictment to pressure defendant while using the *substance* of the bribery allegations to justify its sentencing recommendation. If the bribery theory was abandoned and entered into a plea, the

*Reply*

-11-

Government should not be permitted to import its allegations into a sentencing proceeding for a different offense.

The First Circuit has condemned precisely this tactic. In *United States v. Canada*, 960 F.2d 263, 269-71 (1st Cir. 1992), the court found breach where the government's conduct was 'reasonably likely to have influenced the court' based on information outside the agreement's scope. ("While it can be argued that the government stopped short of explicitly repudiating the agreement, <u>*Santobello*</u> prohibits not only 'explicit repudiation of the government's assurances, but must in the interests of fairness be read to forbid end-runs around them." *Id.*)[1] Here, the Government's repeated references to 'corruption,' the OCIF Commissioner's termination, and amounts twenty-five times greater than the stipulated value are designed to achieve exactly that influence.

## VII.    THE GOVERNMENT'S 'GOOD FAITH' ARGUMENT MISSES THE POINT

The Government argues that its 12-month recommendation is 'within the applicable Guideline range' and therefore cannot constitute breach. (Dkt. No. 31, at 11-12). But defendant's motion does not dispute that 12 months falls within the calculated range. The breach lies in *how* the Government justifies that recommendation.

---

[1] *Santobello v. New York*, 404 US 257 (1971).

*Reply*

-12-

The First Circuit has repeatedly held that technical compliance with literal terms does not cure an 'end-run' around the agreement's purpose. *See Mojica-Ramos*, 103 F.4th at 850-52; *Clark*, 55 F.3d at 12-14; *Canada*, 960 F.2d at 269-71. In *Clark*, the government's references to obstruction of justice were 'grudging and apologetic' rather than explicit—yet the court found breach because 'it is improper for the prosecutor to inject material reservations about the agreement.' 55 F.3d at 13.

Here, the Government's Sentencing Memorandum recommends the statutory maximum for what it acknowledges is a promise valued at $15,000 to $25,000 that was never fulfilled, committed by a zero-point offender. The only way this recommendation makes sense is if the Court considers the excluded bribery conduct. That is the breach.

## IX.    CONCLUSION

The Government's Response confirms the breach rather than refuting it. Its arguments rest on conflating distinct statutory offenses (promise versus receipt), misrepresenting the status of PSR objections, threatening acceptance of responsibility for pursuing a legitimate legal challenge, using its duty of candor to circumvent the plea agreement (contrary to *Saxena*), threatening to resurrect the bribery prosecution while simultaneously using bribery allegations to justify its sentencing recommendation, and mischaracterizing defendant's accurate factual statements as 'false.'

The First Circuit has made clear that plea agreements require 'the most meticulous

*Reply*

-13-

standards of both promise and performance.' *Almonte-Nunez*, 771 F.3d at 89. Technical compliance does not excuse an end-run around the agreement's negotiated boundaries. *Mojica-Ramos*, 103 F.4th at 850-52. The prosecutor 'may not attempt to use [its duty of candor] as an instrument for thwarting' its plea agreement obligations. *Saxena*, 229 F.3d at 6. The Government cannot seek a sentence for the crime it chose not to prosecute.

WHEREFORE, defendant respectfully renews her request that the Court GRANT the Motion to Strike (Dkt. No. 29) and strike the Government's Sentencing Memorandum or, in the alternative, order specific performance requiring the Government to file an amended memorandum consistent with the plea agreement's terms.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, January 14, 2026.

| **s/Peter John Porrata** | **s/ Luis A. Plaza-Mariota** |
|---|---|
| PETER JOHN PORRATA | Luis A. Plaza-Mariota |
| USDC – PR 128901 | USDC - PR 124806 |
| POB 3943 | Luis A. Plaza Law Offices |
| Guaynabo, PR 00969-3943 | P.O. Box 362122 |
| Tel. 407-953-9888 | San Juan, PR  00936-2122 |
| peterjohnporrata@gmail.com | Tel: 787-764-0310 |
|  | plaza@luisplazalaw.com |

*Reply*

-14-

| | |
|---|---|
| **s/ Edgar Sanchez Mercado**<br>EDGAR SANCHEZ MERCADO<br>USDC-PR 227004<br>Tel. 787-565-0916<br>esmlawoffice@gmail.com<br><br>255 Avenida Ponce de León, Suite 1210<br>San Juan, Puerto Rico 00918-1475 | **s/ Ignacio Fernández de Lahongrais**<br>IGNACIO FERNANDEZ DE<br>LAHONGRAIS<br>USDC - PR 211603<br>Tel. 787-923-5789<br>ignacio@bufetefernandezalcaraz.com<br><br>255 Avenida Ponce de León, Suite 1210<br>San Juan, Puerto Rico 00918-1475<br><br>*Attorneys for Wanda Vazquez Garced* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this same date, the undersigned attorney filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for all parties in this action.

**s/ Ignacio Fernández de Lahongrais**
IGNACIO FERNANDEZ DE LAHONGRAIS
USDC - PR 211603
Tel. 787-923-5789
ignacio@bufetefernandezalcaraz.com

255 Avenida Ponce de León, Suite 1210
San Juan, Puerto Rico 00918-1475